<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN DOE**,<br><br>Plaintiff,<br><br>v.<br><br>**RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY**,<br><br>Defendant. | Civil Action No. 23-22385 (ZNQ) (JTQ)<br><br>**OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion to Dismiss ("Motion", ECF. No. 29) filed by Defendant Rutgers, the State University of New Jersey ("Defendant" or "Rutgers"). Defendant filed a brief in support of its Motion. ("Moving Br.", ECF. No. 29-1.) Plaintiff John Doe ("Plaintiff" or "John") filed an Opposition. ("Opp'n Br.", ECF No. 32.) Defendant filed a Reply. ("Reply Br.", ECF No. 35.)

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will DENY Defendant's Motion.

I. **BACKGROUND AND PROCEDURAL HISTORY**

    A.     **FACTUAL BACKGROUND**[1]

        1.     <u>Plaintiff and Jane Roe's Relationship</u>

Plaintiff and his former girlfriend Jane Roe ("Jane") were both undergraduate students in the Rutgers University Mason Gross School of the Arts during the 2021–2022 and 2022–2023 academic school years. (Compl. ¶ 14, ECF No. 1.) Plaintiff and Jane began dating on-and-off in August 2021. (*Id.* ¶ 31.) In December 2021, while Plaintiff and Jane were walking down the hallway in Plaintiff's dorm building, Jane began knocking on Plaintiff's resident assistant's door. (*Id.* ¶ 36.) When Jane allegedly continued to gesture towards knocking after Plaintiff asked her to stop, Plaintiff "responded by playfully placing his hand on Jane's neck and telling her to go to his dorm room." (*Id.* ¶ 38.) Once in his room, Plaintiff and Jane had consensual sex. (*Id.* ¶ 41.)

Plaintiff and Jane separated in May 2022. (*Id.* ¶¶ 33.) As students in the same program, they were enrolled in many of the same courses and would continue to see one another following their breakup. (*Id.* ¶¶ 47, 55.)

In the fall 2022 semester, Plaintiff and Jane were taking at least two courses together. (*Id.* ¶¶ 55–56.) During this time, Jane disclosed to several classmates and at least three Rutgers faculty members that Plaintiff sexually assaulted and harassed her. (*Id.* ¶¶ 52, 56, 57, 58, 59.) Plaintiff alleges that he denied the allegations against him to two professors who had heard the reports, claiming that Jane was spreading false rumors. (*Id.* ¶¶ 60–61.) On September 25, 2022, one of Plaintiff's professors filed a complaint against Plaintiff for allegedly "engaging in unwanted and inappropriate touching, being disruptive and intimidating, making unwanted advances towards

---

[1] For the purposes of this motion, the well-pled facts from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

students, and using abusive language."[2] (*Id.* at ¶¶ 66, 69.) At some point thereafter, Plaintiff took a "brief leave of absence from his program" and planned to return to classes on October 17, 2022. (*Id.* ¶¶ 68, 70.)

The night before Plaintiff's planned return, a professor emailed a few students in his class, including Jane, that Plaintiff would be returning the next day. (*Id.* ¶ 72.) According to Plaintiff, Jane then disseminated this email to the entire class and Plaintiff began receiving threats from other students. (*Id.* ¶¶ 77, 78.)

On October 17, 2022, Plaintiff and his parents met with several Rutgers professors and school administrators to discuss the allegations against him and his peers' response to the allegations. (*Id.* ¶ 88.) Plaintiff alleges that during this meeting, the Chair of the Rutgers Theater Department "urged" Plaintiff to take a leave of absence due to concerns for his safety. (*Id.* ¶ 89.) It is unknown whether Plaintiff ever returned to classes.

On October 18, 2022, a male classmate filed a Title IX complaint against Plaintiff based on Jane's allegations against him and a female classmate similarly sought a no-contact order against Plaintiff. (*Id.* ¶¶ 113, 115.) The no-contact order was granted. (*Id.* ¶ 116, 117.) On October 20, 2022, the Title IX Coordinator filed a Title IX complaint against Plaintiff on Jane's behalf. (*Id.* ¶ 134.). An investigation into the allegations against Plaintiff followed. (*Id.* ¶ 136.)

    2.    <u>Rutgers' Policy</u>

Rutgers' Title IX Policy and Grievance Procedures ("Title IX Policy" or "the Policy") sets forth the university's process for responding to, investigating, and adjudicating reports of both Title IX and non-Title IX sexual harassment. (Ex. A to Defendants' Motion to Dismiss, ECF No.

---

[2] Plaintiff alleges that Rutgers informed him of the complaint against him on October 14, 2022. (Compl. ¶ 69.)

29-2.)³  The Policy requires that "[a]ny University employee who receives a report about conduct prohibited by this Policy involving a student is required to inform the appropriate Title IX Coordinator about the incident." (*Id.* at 12.) "Upon receipt of a report by a Title IX Coordinator or a Rutgers official with authority to institute corrective measures, the Title IX Coordinator (or designee) will notify the Complainant of the availability of Supportive Measures (with or without filing a Formal Complaint) and the option of filing a Formal Complaint . . . ." (*Id.* at 8.)

In contrast, the submission of a Formal Complaint initiates the Title IX grievance procedures, including the initiation of a formal investigation. (*Id.* at 8, 15.) When a complainant does not want to file a Formal Complaint, "the Title IX Coordinator will determine whether it is necessary to initiate a complaint so that the University can respond to the reported conduct of which it has actual notice in a way that is not deliberately indifferent." (*Id.* at 15.) Lastly, if any party involved in a grievance process believes that a "Title IX coordinator, investigator, decision-maker, facilitator . . ., or appeals officer" has a conflict of interest or bias, they may request that the individual not participate in the process. (*Id.* at 14–15.)

### 3. Investigation

The Associate Director for Student Affairs interviewed Plaintiff, and two Title IX investigators interviewed Plaintiff, Jane, and multiple witnesses. (Compl. ¶¶ 138–148.) Plaintiff alleges that, during a December 16, 2022 interview with the Title IX investigators, Plaintiff claimed that Jane physically assaulted him at a party but that this was not reported to the Title IX Coordinator. (*Id.* ¶¶ 149–152.) The Final Investigation Report was issued on March 15, 2023.

---

³ Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleading," *Doe v. Princeton Univ.*, 30 F.4d 335, 342 (3d Cir. 2022) *(quoting In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)), unless the document is "integral to or explicitly relied upon in the complaint under Rule 56," *id.* (quoting *Doe v. University of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020)) ("*USciences*"). Because the Title IX Policy, which Rutgers attached to its Motion, is cited and relied upon in the Complaint (*see, e.g.*, ¶¶ 15–30), the Court may consider it.

(*Id.* at ¶¶ 136, 154.) Plaintiff was charged with Dating Violence, Domestic Violence, and Stalking under Rutgers' Title IX Policy, as well as Non-Title IX Relationship Violence and Non-Title IX Stalking under Rutgers' Code of Student Conduct. (*Id.* ¶¶ 157–158).

          4.        <u>Hearing and Adjudication</u>

On April 5, 2023, Rutgers held a live hearing. (*Id.* ¶ 160.) Tricia B. O'Reilly,[4] a partner at a New Jersey law firm, served as the third-party Decision-maker ("TPD"). (*Id.* ¶¶ 159–160.) Two student witnesses—fellow classmates of Plaintiff—testified at the hearing. (*Id.* ¶¶ 171–173.) In her April 14, 2023, decision, the TPD determined that Plaintiff was not responsible for Domestic Violence under Rutgers' Title IX Policy, not responsible for Non-Title IX Relationship Violence, and not responsible for Non-Title IX Stalking. (*Id.* ¶¶ 190, 266–267.) The TPD did, however, determine that Plaintiff was responsible for Dating Violence and Stalking in violation of Rutgers' Title IX Policy. (*Id.* ¶¶ 190.)

The TPD determined that Plaintiff committed Title IX Stalking based on three separate incidents. (*Id.* ¶ 191.) First, the TPD found that Plaintiff attempted to eavesdrop on Jane and her friends in January 2022 while they were in Jane's dorm room and then subsequently exited the dorm building at the same time as Jane to meet her. (*Id.* ¶ 192.) The TPD further found that Plaintiff followed Jane onto a bus twice in September 2022 as well as onto the elevator in their off-campus apartment building. (*Id.* ¶ 199, 210.) The TPD additionally determined that Plaintiff was guilty of Title IX Dating Violence based on a December 2021 incident where Plaintiff squeezed and applied pressure to the back of Jane's neck. (*Id.* ¶¶ 220–221, 229.) As a result of these determinations, Rutgers suspended Plaintiff for two years. (*Id.* ¶ 269.)

---

[4] Plaintiff alleges that the TPD has previously served as outside counsel for Rutgers in a 2019 matter and that her former law firm had also performed legal work for Rutgers in the past. (*Id.* at ¶¶ 161–164).

5.  <u>Internal Appeal</u>

Plaintiff appealed the determinations and sanctions against him on April 21, 2023, alleging that "procedural irregularities" favored Jane over Plaintiff and that the sanction "was disproportionate to the alleged conduct." (*Id.* ¶¶ 270–275). The Rutgers Assistant Vice Chancellor for Student Affairs denied Plaintiff's appeal on May 19, 2023, and upheld Plaintiff's two-year suspension. (*Id.* ¶ 276).

**B.  PROCEDURAL HISTORY**

On November 15, 2023, Plaintiff initiated the current suit by filing his Complaint. Plaintiff alleges that Rutgers' Title IX process was impacted by "anti-male gender bias" such that: first, Rutgers selectively enforced its Title IX policies against him while failing to investigate Plaintiff's own Title IX allegations against Jane, and second, Rutgers reached an erroneous decision in finding him responsible for violating Rutgers' policies because he was innocent. (*Id.* ¶¶ 3–4, 319–320.) Plaintiff additionally alleges that Rutgers was under pressure to respond aggressively to allegations by female complainants. (*Id.* ¶ 335.) In lieu of an answer, Defendant now moves to dismiss the Complaint, contending that Plaintiff never reported any Title IX allegations against Jane to faculty and that his assertions of procedural errors and irregularities are unsupported. (Moving Br. at 7–8.)

**II.  <u>LEGAL STANDARD</u>**

A complaint may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When considering a motion under 12(b)(6), a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all the plaintiff's well-pleaded factual allegations and "construe the complaint

in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed me. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III. DISCUSSION

The Complaint asserts a single claim: that Defendant violated Title IX of the Education Amendments of 1972. (Compl. ¶¶ 297–352.) Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded, from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Among other things, it "bars the imposition of university discipline where gender is a motivating factor." *Doe v. Princeton Univ.*, 30 F.4d 335, 343 (3d Cir. 2022) (quoting *Doe v. Univ. of Sciences.*, 961 F.3d 203, 209 (3d Cir. 2020)) ("*USciences*"). In *USciences*, the Third Circuit adopted a "straightforward pleading standard" for Title IX claims. 961 F.3d at 209. The court held that "to state a claim under Title IX, the alleged facts, if true, must support a plausible inference that a federally-funded college or university discriminated against a person on the basis of sex." *Id.*

"Allegations that may support gender bias include 'statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender.'" *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). Generalized and conclusory allegations are insufficient to raise an inference of disparate treatment where a male plaintiff "alleged no facts reflecting that the disciplinary process and results for female victims are different from men." *Doe v. Princeton Univ.*, 790 F. App'x 379, 383 (3d Cir. 2019) (affirming dismissal of Title IX claim because allegations that the plaintiff "would not have been subject to Princeton's discriminatory acts if he were a female victim," and that the university "does not believe male students can be victims," were insufficient to survive a motion to dismiss).

Plaintiff alleges that Rutgers' selective investigation and enforcement of its policies, an erroneous disciplinary outcome, and pressure to respond more aggressively to female accusers support the inference that Rutgers discriminated against him based on sex. (*Id.* ¶¶ 306, 328, 334.) In support of these claims, Plaintiff points to alleged treatment of "the same set of facts very differently for the male and female students," (*id.* ¶ 306), "numerous evidentiary and procedural flaws throughout Rutgers' Title IX process," (*id.* ¶319), and the adoption of "a policy of bias favoring female students over male students" after "the United States Department of Education published its 2011 Dear Colleague Letter ("2011 DCL")," (*id.* ¶¶ 335–344). On its Motion, Defendant argues that Plaintiff has failed to sufficiently allege facts in the Complaint that support his assertion that sex bias influenced the Title IX process. (Moving Br. at 9–10.) Plaintiff responds that he adequately pleads a Title IX claim because the Complaint identifies a "female comparator who was treated more favorably" and the "existence of a one-sided proceeding[]." (Opp'n Br. at 20, 26.)

8

A. **EXTERNAL PRESSURE**

To begin, we consider Plaintiff's allegations that Rutgers was under pressure to respond aggressively to accusations of sexual and dating violence against male students following the 2011 DCL. (Compl. ¶ 335.) The Third Circuit has acknowledged that the 2011 DCL "ushered in a more rigorous approach to campus sexual misconduct allegations." *USciences*, 961 F.3d at 210. The general impact of the 2011 DCL is not, however, enough by itself to state a claim that Rutgers acted with bias against Plaintiff. The Third Circuit has cautioned that "allegations about pressure from DoEd or other public pressure is relevant to alleging a plausible Title IX discrimination claim . . . but cannot alone support a plausible claim of Title IX sex discrimination." *Id.* Here, Plaintiff also points to Rutgers' creation of a "comprehensive action plan" on how to combat sexual and dating violence on campus as a biased response to this pressure. (*See e.g.*, Compl. ¶¶ 337–340 (explaining that Rutgers conducted a campus wide survey and developed a plan on how to deal with sexual misconduct premised on the finding that "men tended to commit the majority of acts of sexual and dating violence"); *Id.* ¶¶ 340–341 (noting that the plan included a "Men's Engagement Working Group . . . to focus on engaging men on issues regarding men's mental health and interpersonal violence victimization and perpetration" but Rutgers did not create a corresponding group for women).

Although the Court finds that these pressures are a relevant "factor into the total mix of information," *see Princeton*, 30 F.4th at 345, they are, on their own, insufficient to meet Plaintiff's pleading burden. *Doe v. Univ. of Denver*, 952 F.3d 1182, 1193 (10th Cir. 2020) (noting that "evidence of the [2011] DCL and the pressure [the university] felt to comply with its guidance" must be "combined with a 'particularized something more' . . . that would indicate that [the university's] decision in [the plaintiff's] particular case was based on his gender" (quoting

9

*Columbia Coll. Chi.*, 933 F.3d 849, 856 (7th Cir. 2019))); *See Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (the 2011 DCL letter "provides a backdrop that, when combined with other circumstantial evidence of bias in [a] specific proceeding, gives rise to a plausible claim").

The Court thus turns to Plaintiff's additional allegations of sex bias.

### B.  DISPARATE TREATMENT

Plaintiff bases his allegation of selective investigation and enforcement primarily on the claim that Jane's reports of misconduct were treated with more urgency and seriousness than his own. For the reasons set forth below, the Court finds that Plaintiff has stated a plausible claim for relief.

#### 1.  Stalking

First, Plaintiff alleges that Jane's "repeated spreading of false rumors about [him] constituted Stalking as defined by the Rutgers Title IX Policy" but this conduct was never reported to or investigated by the Title IX office. (*Id.* ¶¶ 78, 307.) Plaintiff alleges that he informed two professors that the rumors were false—and one was aware that other students threatened physical violence against Plaintiff due to the rumors—but the professors failed to report this conduct. (*Id.* ¶¶ 60-61, 84, 124–135, 307.) In addition, Plaintiff claims that during a meeting on October 17, 2022, the Chair of the Rutgers Theater Department told Plaintiff it may not be safe for him to return to campus due to the threats he received but similarly failed to report the conduct to the Title IX Coordinator. (*Id.* ¶¶ 88–91.) In response, Defendant argues that Plaintiff did not report to anyone that Jane was "stalking" him, did not file a Formal Complaint (which is required to initiate an investigation), and that regardless, the conduct alleged is not gender-based harassment under the Policy. (Moving Br. at 7, 19–20.)

2. Assault

Second, Plaintiff alleges that Rutgers failed to report or investigate Plaintiff's allegations that Jane assaulted him. Plaintiff asserts that, during the investigation into the allegations against him, he disclosed to the Title IX investigators that Plaintiff had physically assaulted him at a party in September 2021 and the investigator's response "failed to comply with the requirements of the Rutgers Title IX Policy." (*Id.* ¶¶ 149, 311.) Defendant responds that as designees of the Title IX Coordinator, the investigators "upon receipt of a report, . . . will notify the Complainant of the availability of Supportive Measures and the option of filing a Formal Complaint." (Moving Br. at 13.) Defendant argues that the investigators complied with this mandate and were otherwise not required to report the conduct to the Title IX Coordinator. (*Id.* ¶ 14.)

Defendant's position is inconsistent with controlling precedent in this Circuit. In *Princeton*, the Third Circuit pointed to two allegations that provided a sufficient inference of gender discrimination for the complaint to survive dismissal. 30 F.4th at 344–45. First, Princeton initially steered the plaintiff, a male student, to seek "mental health services" after reporting that his ex-girlfriend (Roe) was "harass[ing]" and "spreading false information" about him, *id.* at 340, but "encouraged Roe to file a formal Title IX complaint" after reporting that the plaintiff subjected her to 'Intimate Relationship Violence," *id.* at 340, 344. Second, when the plaintiff violated a no-contact order, he "was met with formal disciplinary process" while Roe's violation "was dismissed as minor." *Id.* at 344–45.

Notably, in *Princeton*, the Third Circuit rejected the university's justification that the students were treated differently because the plaintiff failed to file a complaint to trigger an investigation. The Circuit further found unconvincing the university's argument that the plaintiff's allegations of "rumor spreading" went un-investigated because such conduct did not violate the school's policy. *Id.* at 344. The court reasoned that "though 'anti-male bias is not the only

11

plausible explanation for the university's conduct, or even the most plausible[,] . . . alternative explanations are not fatal to Doe's ability to survive a Rule 12(b)(6) motion to dismiss.'" *Id.* (alteration in original) (quoting *Baum*, 903 F.3d at 587). The Third Circuit found that "anti-male bias" plausibly explained the school's differential treatment of the two students and that therefore "the Complaint state[d] a plausible claim of sex discrimination." *Id.* at 345.

Further, in *USciences*, the Third Circuit found that the university was improperly motivated by sex when it investigated the plaintiff but chose not to investigate the complainant after the plaintiff informed investigators that he and the complainant were comparably intoxicated when they had sex and thus, equally unable to give consent. 961 F.3d at 210. In the absence of a formal complaint, the court found that the plaintiff "plausibly allege[d] that, at the latest, [USciences] had notice that [Roe] may have violated the Policy when the investigator submitted her report to the Title IX Coordinator." *Id.* at 210–11.

Here, although there may be other plausible, alternative explanations for treating Plaintiff's reports differently—such as Plaintiff's failure to file a Formal Complaint—, on a motion to dismiss the Court is obliged to "construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Therefore, while Rutgers' explanation may be plausible, the "plausibility standard is not akin to a 'probability requirement.'" *Princeton*, 961 F.4th at 344 (quoting *Iqbal*, 556 U.S. at 678). As in *Princeton* and *USciences*, Plaintiff alleges, at the very least, that he reported a violation that was not investigated by Rutgers. Drawing all reasonable inferences in the light most favorable to Plaintiff, as the Court must at this stage, the Court concludes that the facts alleged plausibly plead that sex was a motivating factor in Rutgers' enforcement of its Policy.

### C. PROCEDURAL FLAWS (ERRONEOUS OUTCOME)

Plaintiff additionally alleges that Rutgers reached an incorrect outcome when it found him responsible for multiple violations of Rutgers' policies due to a flawed grievance process. (Compl. ¶ 174.) "A plaintiff must 'cast some articulable doubt on the accuracy of the disciplinary proceeding" and then show "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Doe v. St. Joseph's Univ.*, 832 F. App'x 770, 773 (3d. Cir. 2020) (quoting *Yusuf*, 35 F.3d at 715).

Plaintiff alleges that the TPD made numerous improper rulings against him during the Title IX hearing including that the TPD: (1) barred Plaintiff from asking a witness about her romantic relationship with Plaintiff which occurred after Jane's accusations against Plaintiff surfaced, (Compl. ¶¶ 177, 319); (2) allowed the witnesses to provide supplemental written statements, (*id.* ¶¶ 184, 188, 331); and (3) permitted Jane to introduce evidence regarding Plaintiff's mental health and medical history in violation of the Policy, (*id.* ¶¶ 185, 330). Plaintiff also alleges that the TPD made incorrect credibility determinations and construed all inconsistencies in Jane's favor. (*Id.* ¶ 318.) Although Plaintiff concedes and details five instances in which the TPD found that Jane's claims were not credible, (*id.* ¶ 258–263), Plaintiff does allege facts that support a plausible inference that the TPD was influenced by anti-male bias.

For example, Plaintiff pleads that the TPD found that Jane feared for her safety during an incident in January 2022 (the first stalking incident) even though he and Jane were in a relationship at that time. (*Id.* ¶¶ 193–196.) Plaintiff thus alleges that the TPD's "finding that Jane reasonably feared for her safety as a result of the January 2022 encounter is inconsistent with the undisputed fact that Jane continued to have a consensual sexual relationship with [Plaintiff] for four months [following the incident.]." (*Id.* ¶ 197.) *See Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d. Cir. 2016)

13

(explaining that "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias").

In addition, Plaintiff alleges that the TPD found that Plaintiff followed Jane onto a bus back to their off-campus building (where they both lived) in the face of Plaintiff's explanation that he "was simply going home." (*Id.* ¶ 216.) The TPD's own admission recognized a "legitimate reason for that choice" may have been because the next bus would not arrive for another twenty-six minutes. (*Id.* ¶ 214.) Therefore, due to the Court's obligation to draw reasonable inferences in favor of the sufficiency of the Complaint, it finds that Plaintiff alleges sufficient procedural flaws to raise a plausible inference of discrimination based on sex. *Columbia Univ.*, 831 F.3d at 58 (inference of gender bias permitted where allegedly biased individual "had significant influence, perhaps even determinative influence, over the University's decision").

Taken together, the Court finds that Plaintiff has raised a plausible inference that sex was a motivating factor in Rutgers' disciplinary process and its decision to suspend Plaintiff. Given that a plausible inference is all that is required at this stage, the Court will deny Defendant's Motion to Dismiss.

## IV.  CONCLUSION

For the reasons stated above, the Court will deny Defendant's Motion to Dismiss. An appropriate Order will follow.

Date: **September 27, 2024**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
